IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02470-PAB-MJW

LAURA L. KNIGHT,

    Plaintiff,

v.

THE VALLEY COUNTRY CLUB, a Colorado non-profit corporation,
MARK TIERNAN, and
ANDREYA BENDER, an individual,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Motion for Summary Judgment [Docket No. 22] filed by defendants The Valley Country Club ("VCC"), Mark Tiernan, and Andreya Bender. Plaintiff filed this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover overtime she alleges defendants failed to pay her. Defendants' summary judgment motion raises the issue of whether plaintiff falls within the "administrative exemption" of the FLSA. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

VCC is a private country club with golf, tennis, and swimming facilities as well as a dining facility. Docket No. 22 at 2, Statement of Undisputed Material Facts ("SUMF") 1. VCC hosts catered events for members and nonmembers as well as catered holiday

---

[1] The following facts are undisputed unless otherwise indicated.

events. *Id.* SUMF 2. In January 2008, VCC hired plaintiff as the Catering Director, at an annual salary of $43,000. *Id.* at 3, SUMF 3-4. Plaintiff was eligible for a bonus depending on the amount of revenue she generated from catered events. *Id.* SUMF 4. Plaintiff reported directly to VCC's executive chef. *Id.* SUMF 5. VCC's marketing material for special events highlighted the ease of planning events. *See* Docket No. 27-3 at 4 ("Our three step planning process is designed to make planning your event easy and efficient so you may concentrate on your other priorities. Our process is: Secure Your Date and Time[,] Select Your Meal Choices[,] Select Your Beverages").

The parties dispute the precise nature of plaintiff's work as Catering Director. Defendants state that plaintiff was "in charge of planning" all member and nonmember club and banquet events. Docket No. 22 at 3, SUMF 6. Plaintiff responds that she was not in charge but, rather, that she worked under supervision and in committees. Docket No. 27 at 2, Response to SUMF 6.[2]

---

[2]In many instances, defendants overstate plaintiff's deposition testimony. For instance, in defendants' SUMF 7, they claim that plaintiff was "authorized to waive certain fees at her discretion." Docket No. 22 at 4. The cited testimony, however, provides no support for defendants' statement. When asked if she had authority to waive the "room charge" for events, plaintiff responded that she remembered one occasion on which she "asked . . . if we could waive the room charge," and indicated that the couple for whom she made the request may have been a former employee. *See* Docket No. 22-1 at 17, 66:24-67:6. This does not support defendants' claim that plaintiff had "the unilateral discretion to waive certain fees." Docket No. 22 at 13. Defendants' SUMF 8 implies that one of plaintiff's primary duties was "work[ing] with the Chef to create a menu" to fit the client's needs. *Id.* at 4. Plaintiff's testimony, however, states that VCC had a packet with pre-set menus and that, if a customer wanted something that was not on those menus, "we could customize" a different menu. Docket No. 22-1 at 8-9, 29:14-30:5. Likewise, defendants' SUMF 10 states that plaintiff "was the face of VCC when it came to catered events" and that she "worked with the clients, staff, and vendors to ensure the clients had the experience they desired." *Id.* at 4. The cited evidence, however, is defendants' counsel's characterization that, if a client who booked an event came in before the event to "kind of make sure everything .

2

Plaintiff was present for nearly every catered event and would review details with the staff beforehand. Docket No. 22 at 4, SUMF 9. Defendants state that plaintiff "oversaw" all regularly-scheduled events, including yearly holiday events, *See* Docket No. 22 at 4, SUMF 11. Plaintiff disputes this. Docket No. 27 at 3, Response to SUMF 11. Plaintiff maintains that decisions concerning events were made by a committee and that her role was implementing the committee's decisions, Docket No. 22-1 at 15, 58:23-59:15; that the wait staff was primarily responsible for responding to problems with food service, *id.*, 61:19-25; that plaintiff's role in responding to client complaints was to bring them to the chef, *id.* at 16, 62:6-13, and that work performed during banquets was a team effort. *Id.* 62:21-25. Plaintiff claims that the person who gave "direction" related to problem solving alternated among plaintiff, the Banquet Captain, and the Food and Beverage Director. *Id.* 62:21-63:16. Plaintiff did not have an assigned work or break schedule and was not required to clock in or out. Docket No. 22 at 5, SUMF 14-15. Instead, plaintiff had discretion to decide when to begin work and when to leave after her work was completed. *Id.* at 6, SUMF 19.

Plaintiff was responsible for soliciting business from non-VCC members. *Id.* SUMF 21. Plaintiff hosted and attended lunch events with catering directors from other venues. *Id.* SUMF 24. The catering directors who attended these luncheons would

---

. . is set up right, looks right," plaintiff would be the person who would "kind of do that walk-through[.]" Docket No. 22-1 at 16, 62:14-19. Plaintiff responded that defendants' counsel's characterization was correct "[m]ost of the time." *Id.* 62:20. Defendants cite no testimony that supports that plaintiff worked with staff or vendors. Plaintiff consistently testified that staffing events was not part of her duties, *see id.* at 9, 31:7-12, 15, 60:1-9, 61:2-8, and that she only directed the wait staff at events when the Food and Beverage Director was not present. *Id.* at 15, 61:15-18.

regularly refer clients to each other when clients sought to book their events on a date that was not available. *Id.*; *see also* Docket No. 22-1 at 8, 28:22-29:13. Plaintiff states that "[a]pproximately 80%" of her work time was spent communicating with customers and potential customers. Docket No. 27-3 at 2, ¶ 6. Plaintiff states that this communication involved "showing customers [VCC's] banquet rooms, providing price lists and other materials to customers and preparing banquet event orders." *Id.* In 2013, plaintiff sold 396 member and non-member events at VCC and assisted in 73 club events. *Id.* ¶ 7. The VCC club events, which included holiday events, were provided as a benefit of club membership and did not generate meaningful revenue for VCC. *Id.* ¶ 8. VCC terminated plaintiff's employment on April 21, 2014. Docket No. 22 at 6, SUMF 25.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. ANALYSIS

Under the FLSA, an employer must pay an employee overtime compensation at a rate not less than one and one-half times the employee's regular rate of employment for all hours that the employee works in a given week above 40 hours. 29 U.S.C. § 207(a)(1) (the "overtime requirement"). The FLSA includes a number of exemptions to the overtime requirement. The relevant exemption in this case is the so-called

"administrative exemption," which applies to "any employee employed in a bona fide . . . administrative . . . capacity[.]" 29 U.S.C. § 213(a). Regulations promulgated by the Department of Labor define an administrative employee as any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). "Exemptions are to be narrowly construed, and the employer bears the burden of showing the employee fits plainly and unmistakenly within the exemption's terms." *Spradling v. City of Tulsa, Okla.*, 95 F.3d 1492, 1495 (10th Cir. 1996).

Plaintiff does not dispute that she satisfies the minimum salary requirement of an administrative employee but argues that her primary duty was not directly related to the management of general business operations and did not involve the exercise of sufficient discretion and independent judgment on matters of significance to render her exempt from the overtime requirement. The Court addresses each of these issues in turn.

The second element of the administrative exemption test is whether plaintiff's primary duty is the performance of work "directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). "The phrase 'directly related to the management or general business

operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* § 541.201(a).[3]

"The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Although "[t]he amount of time spent performing exempt work can be a useful guide" in determining an employee's primary duty, "[t]ime alone . . . is not the sole test." *Id.* § 701(b). Factors to consider include "the relative importance" of any exempt duties "compared with other types of duties; the amount of time spent performing exempt work, the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* § 541.700(a). "[T]he question of which duty is the 'primary duty' is a question of fact." *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 828 (10th Cir. 2012).

Defendants argue that it is "undisputed that Plaintiff's primary duty as the Catering Director was to plan, organize, and execute member and nonmember events

---

[3] Examples of work "directly related to management or general business operations" include, but are not limited to, "functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and heath; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b).

at VCC," that plaintiff "scheduled herself to ensure she was present for nearly every event," and that the "vast majority of Plaintiff's time was spent working with clients to plan and organize their events." Docket No. 22 at 9. Defendants state that plaintiff solicited new nonmember business, attended networking events on behalf of VCC, and worked directly with clients to plan and execute events. *Id.* at 10. Plaintiff responds that her primary duties were sales and sales-related tasks and that the task of interacting with customers looking for a venue to host an event and providing them with information about VCC's facilities and pricing occupied approximately 80% of her time. Docket No. 27 at 7; *see also* Docket No. 27-3 at 2, ¶ 6.

The Court finds that defendants have not met their burden of showing "clearly and unmistakenly" that plaintiff's primary duty was directly related to management or general business operations. *Spradling*, 95 F.3d at 1495. The parties seem to agree that plaintiff spent a good deal of time interacting with clients and potential clients, but they disagree about how to characterize that interaction. Defendants characterize plaintiff's client interaction as reflecting an administrative function, "interact[ing] with clients on all issues ranging from decorations, to layout of the event, to entertainment and vendors, to creating a menu and providing alcohol." Docket No. 22 at 10. Plaintiff, however, characterizes her client interaction as primarily sales-based. Docket No. 27 at 7.[4] Plaintiff also introduces evidence from Robert Banker, a former VCC employee who

---

[4]Defendants argue that, to the extent the Court accepts plaintiff's characterization of her work in her affidavit as sales-based, the affidavit should be rejected as a sham affidavit that contradicts her deposition testimony. Docket No. 28 at 3, n.2. The Court disagrees. Defendants do not cite any testimony that relates to the amount of time that plaintiff spent on any specific activity and therefore have not demonstrated any contradiction between plaintiff's deposition and her affidavit.

was in charge of human resources, who describes plaintiff as an "order-taker" whose primary duty "was to speak to or meet with prospective customers," show them "a pre-printed set of available menus and tell them about or show them the rooms that were available at VCC for such events." Docket No. 27-4 at 2, ¶ 6.[5]

Defendants cite *Hines v. State Room, Inc.*, 665 F.3d 235, 242-43 (1st Cir. 2011), for the proposition that a catering director whose job requires him or her to work with clients to create custom events satisfies the second element of the administrative exemption test. *See* Docket No. 22 at 11. In *Hines*, the court found that former sales managers satisfied the second element of the administrative exemption test. *See id.* *Hines* is distinguishable from this case in numerous respects. First, the *Hines* court found that the "principal business" of the defendant was providing banquets. 665 F.3d at 242. Here, by contrast, defendants describe VCC as a "private country club with golf,

---

[5]Defendants ask the Court to reject Mr. Banker's statements as a sham affidavit on the grounds that it contradicts plaintiff's deposition testimony. Docket No. 28 at 5. The Court will not do so. First, defendants mischaracterize much of Mr. Banker's testimony. For example, defendants say that Mr. Banker testified that plaintiff "only offered standardized menu items and could not customize menus or events." *Id.* Mr. Barker's testimony was that plaintiff "could only deviate from pre-printed menus with the direct approval and pricing instruction from the Chef." Docket No. 27-4 at 3, ¶ 9. As discussed in this order, defendants' characterization of plaintiff's supposedly wide-ranging authority to customize menus misstates her testimony. The Court sees no contradiction between Mr. Banker's affidavit and plaintiff's deposition testimony on this point. Second, defendants cite to no Tenth Circuit case applying the sham affidavit doctrine to third parties. The Ninth Circuit case that defendants cite stands for the opposite proposition. *See Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009) ("we decline to extend our sham affidavit jurisprudence to preclude the consideration of testimony from third parties that is arguably inconsistent with a party's own testimony"). The Eighth Circuit case that defendants cite mentioned the sham affidavit doctrine in the context of rejecting a third-party affidavit, but also held that, due to the third party's own internal contradictions, "no reasonable jury" could return a verdict for the plaintiff based on the contradictory testimony. *Prosser v. Ross*, 70 F.3d 1005, 1009 (8th Cir. 1995).

tennis and swimming facilities" in addition to its banquet facility. Docket No. 22 at 2, SUMF 1. Moreover, plaintiff states in her affidavit that the club's dining facility was used to put on events for members that cost VCC money rather than generating revenue. *See* Docket No. 27-3 at 2, ¶ 8. Thus, unlike the defendant in *Hines*, VCC's primary business was not holding banquets. Moreover, the *Hines* court stressed that one of the primary goals of the plaintiffs' job was to "create a truly custom event for each client," *Hines*, 665 F.3d at 245, and that the plaintiffs "worked with each client to create a custom event in all of the particulars." *Id.* at 243. The *Hines* plaintiffs were required to "proactively manage client expectations" and they were "accountable for the 'life'" of clients "while they book, and then plan and execute their event" with the defendant. *Id.* at 237. Here, plaintiff provides evidence that she was an "order-taker" who was "responsible for offering standardized items to customers." Docket No. 27-4 at 2-3, ¶¶ 6, 9. Plaintiff has also provided evidence that VCC marketed itself to potential customers as a venue that would make event planning "easy and efficient" so that customers can "concentrate on [their] other priorities," Docket No. 27-3 at 4, rather than a venue that specialized in creating "custom event[s] in all of the particulars." *Hines*, 655 F.3d at 243.

      The Court finds that, based on the evidence plaintiff has introduced concerning the scope of her duties, a reasonable jury could conclude that her primary duty involved sales of VCC's banquet service. This dispute bears directly on whether plaintiff qualifies under the administrative exemption, since "selling a product in a . . . service establishment" is not a duty that is "directly related to management or general business

operations." 29 C.F.R. § 541.201. The parties' differing interpretations of plaintiff's duties create a genuine issue of material fact that is properly for a jury to resolve.

Because the Court finds that defendants have not satisfied their burden of showing that plaintiff's primary duty was directly related to the management or general business operations of her employer, summary judgment is inappropriate. The Court need not and does not consider whether defendants have met their burden, under the third element of the administrative exemption test, to show that plaintiff's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants The Valley Country Club, Mark Tiernan, and Andreya Bender's Motion for Summary Judgment [Docket No. 22] is **DENIED**.

DATED August 31, 2015.

                                        BY THE COURT:

                                        s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        United States District Judge